CRICHTON, J.,
concurring in part and dissenting in part:
|,I concur in the plurality[1] opinion’s finding that there has been nó' violation of *1059 the Code of Judicial Conduct in this case, and therefore, no sanction against Judge Derbigny is warranted. However, because this Court finds no ethical violation, I dissent from the plurality’s conclusion that Judge Derbigny must reimburse the Judicial Expense Fund for the out-of-pocket reimbursements paid to him under the Exec-U-Care program. As Justice Weimer points out in his dissent, and with which I agree, this Court is divested of jurisdiction under La. Const, art. V, § 25(C) once there is a finding of no ethical misconduct, and consequently, the Court lacks authority to order reimbursement.
In bringing ' forma! Charges against Judge Derbigny in this case, the Judiciary Coihmission reversed the view it had held since 1994, previously'" having determined there was no judicial misconduct involving the purchase of insurance by the Orleans Parish Criminal District Court Judges. In so doing, the Judiciary Commission has now abruptly declared that by engaging in the routine administrative practices of Criminal District Court, Judge Derbigny engaged in persistent and public conduct prejudicial to the administration of justice. As the plurality thoroughly explains, we disagree.
1 ¡Although the Commission may have found a violation by clear and convincing evidence, in my view, ’ the Commission seems to have placed little weight on the 20- to 30-year roútine practice of the Criminal District Court and its seemingly perfunctory administrative procedures. Not only did the Conlmission seem to overlook the historical practices of Criminal District Court, it also mistakenly placed little emphasis -on the 1994 opinion of the Judiciary -Commission (that .¡there was no judicial misconduct involving the purchase of insurance for the judges); the 1994 legal opinion of the judges’ counsel, Robert Murphy;[2] the complete inaction of the policy-making arm of the Louisiana Supreme Court, the Judicial Council; and the 2011 legal opinion of the judges’ counsel, Normand Pizza (who also concluded the program was not an ethical violation). Moreover, while intent (whether specific or general) is noticeably not an element of a Code of Judicial Conduct violation, this Court' must still examine Judge.Derbigny1,s actions in light of the unique historical factors listed above. In doing so, I cannot under any circumstance conclude any violation of the Canons was proven by clear and convincing evidence (a considerably higher standard than that required in civil proceedings) in this case.
The implication by one of my dissenting colleagues that a majority of this Court is shirking its duty to .protect the public is troubling. Clearly, it is a sacred tenor repeatedly recognized by this Court that the primary purpose of the Code of Judicial Conduct is to protect the public rather than to discipline a judge. In re Marullo, 96-2222, p. 6 (La. 4/8/97), 692 So.2d 1019, 1023. And, furthermore, this Court ’does not shy away from imposing discipline when the charge^ are, indeed, | ¡¡proven by clear and convincing evidencé[3] The *1060 impli-catión by one of the dissenters in this case that we show leniency to judges who, by clear and convincing evidence, are proven to have violated the Judicial Canons is patently false and, in my opinion, borders on outrageous.
This Court is constitutionally vested with exclusive original jurisdiction in judicial disciplinary proceedings, an obligation we do not take lightly. We are also duty-bound to apply the appropriate burden of proof to the facts and evidence of each case without influence of public clamor or fear of criticism. While I likely would have taken a different course of action from that taken by Judge Derbigny and his Criminal District Court colleagues, I note such an observation is irrelevant in objectively determining whether a Canon violation has been proven by clear and convincing evidence. In my view, the Commission and one dissenting justice have incorrectly characterized the evidence presented in this case to be merely mitigation which, according to them, should only be considered after finding an actual ethical violation. While that principle stands true, it is also correct that the unique hisforical background evidence is relevant and directly bears on whether the prosecution
has sustained its burden of proof as to the allegations of misconduct. |4As a result, I believe-the evidence in the record before us results in a very unclear and unconvincing set of allegations. As the plurality opinion implicitly concludes, we do not reach the sanction mitigation phase because the alleged violations were not proven by clear and convincing evidence.
The Judiciary Commission has now spoken, reversing its original 1994 opinion, and this Court does not disagree with the Commission’s change of - course. Again, noting the Court’s inherent and plenary authority over lawyer and judicial discipline matters and in accord with traditional notions of due process, I believe that prospectively, all judges are now placed on notice that any insurance or retirement-related benefits not specifically authorized by statute should not be paid for by parish or state funds. In sum, .by recognizing the twin objectives of protecting the public, which includes our public fisc, and according our elected judges basic due process, we achieve justice deserved.

. "When a fragmented Court decides a casé and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in *1059 the judgments on the narrowest grounds.” Maries v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (internal quotations omitted)..

. The dissenting justice states this Court places an “insurmountable burden of proof” on the Office of Special Counsel regarding the supplemental insurance. I respectfully disagree, as the Commission in 1994 concluded there was no ethical violation. Without a subsequent pronouncement by the Judiciary Commission or this Court during the span- of time since 1994,1 am confounded by the lack of due process and how the burden of proof • can possibly be met.

. This Court has removed judges in cases when the most serious conduct is proven by clear and- convincing evidence. See, e.g., In re Benge, 09-1617 (La. 11/6/09), 24 So.3d 822, reh'g den., 11/23/09 (judge removed from of *1060 fice for failing to decide a case on the evidence and testimony presented at trial); In re Jefferson, 99-1313 (La. 1/19/00), 753 So.2d 181, reh'g den., 2/18/00 (judge removed from office for reckless and bad faith handling of contempt proceedings, unauthorized practice of law, and failure to cooperate with supernumerary judge); In re Johnson, 96-1866 (La. 11/25/96), 683 So.2d 1196, reh’g den. 12/13/96 (judge removed from office for continuation and management of business providing pay telephone service to inmates under contract with sheriff after he became .a judge); In re Huckaby, 95-0041, (La. 5/22/95), 656 So.2d 292 (judge removed from office for failing to file federal income taxes).
This Court has also suspended or publicly censured judges when appropriate. See, e.g., In re Best, 15-2096 (La. 6/29/16), 195 So.3d 460 (judge suspended without pay for fifteen days for mishandling of a hearing to terminate probation); In re Free, 2016-0434 (La. 6/29/16), 199 So. 3d 571 (judge suspended without pay for one year for making ex parte comments about a pending case to a district attorney and the victims’ families; improperly holding a defendant in contempt of court; and making inappropriate comments towards domestically abused women); In re Sims, 2014-2515 (La. 3/17/15), 159 So.3d 1040 (judge suspended for thirty days without pay for improperly holding prosecutor in contempt and impermissibly dismissing fifteen criminal cases); In re Whitaker, 463 So.2d 1291 (La. 2/25/85) (judge suspended without pay for one year for smoking marijuana, associating with users and sellers of illegal drugs and with prostitutes, and association with an individual’ against whom criminal charges were pending).